Albert D. GREEN and George K. Swerda, Petitioners,

v.

GENERAL SERVICES ADMINISTRATION, Respondent.

No. 99–3280.

United States Court of Appeals, Federal Circuit.

July 18, 2000.

---

Daniel Minahan, Minahan and Shapiro, P.C., of Lakewood, Colorado, for petitioners.

Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Harold D. Lester, Jr., Assistant Director. Of counsel was Anthony H. Anikeeff, Attorney.

Before NEWMAN, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Albert D. Green and George K. Swerda ("Petitioners") petition for review of the final decision of the Merit Systems Protection Board ("Board") that dismissed their appeals for lack of jurisdiction. *See Green v. General Servs. Admin.*, 82 M.S.P.R. 45 (M.S.P.B.1999) *("Green II")*.[1] Petitioners were challenging the General Services Administration's ("agency's") denial of their requests to withdraw from their separation agreements. The Board determined that the agency had a valid reason for denying Petitioners' requests to withdraw from the agreements. *See id.*, 82 M.S.P.R. at 51–

52. The Board also determined that Petitioners had not established that their requests were based on extraordinary circumstances or that denials of the requests would result in extreme hardship. *See id.*, 82 M.S.P.R. at 53. Because Petitioners' separations were otherwise voluntary, the Board dismissed their appeals for lack of jurisdiction. *See id.* We affirm.

## BACKGROUND

### I

The pertinent facts are not in dispute. While Petitioners were employed by the agency, the agency conducted several buyout programs in order to reduce its workforce. Pursuant to one of these programs, Petitioners were offered voluntary separation incentive payments in exchange for their voluntary separations. A letter describing the program cautioned employees that if they elect to participate in the program they "will be held to that commitment unless ... [they] can provide management with proof of an extreme hardship or extraordinary circumstances. ... Please note that few exceptions will be made." Another document describing the program stated that "[a]n example of such an extraordinary circumstance would be the unexpected death of a spouse."

Petitioners entered into separation agreements in March of 1995, indicating that they desired to be separated on December 31, 1996, the last day they could separate under the program. After entering into the agreements, but before their separation dates, Petitioners tried to withdraw from their separation agreements.

Mr. Green alleges that he first requested to withdraw from his separation agreement in a letter dated July 26, 1996. In this letter, Mr. Green referenced the death of his wife the previous week, and stated that his doctor recommended that he keep

---

1. The Board consolidated the appeals of three separate petitioners: Mr. Green, No. DE–0752–97–0524–I–1, Mr. Swerda, No. DE–0752–97–0523–I–1, and Ms. Hicklin, DE– 0752–97–0525–I–1. Ms. Hicklin did not appeal the Board's decision, which was in her favor.

working to preserve his health and well-being. Mr. Green also asserted in the letter that his continued employment would benefit the agency because of his unique knowledge and experience.

According to the agency, Mr. Green's July 1996 letter never was received by the agency's Buyout Committee. The Buyout Committee based its decision on Mr. Green's request on a March 1997 letter from Mr. Rosser, Director, DFC Service Center, to Gail T. Lovelace, Director, Office of Personnel. In his letter, Mr. Rosser did not mention Mr. Green's July 26 letter or the death of Mr. Green's wife. He referenced instead a September 25, 1996 request by Mr. Green to withdraw from his separation agreement, and recommended that Mr. Green be permitted to remain employed because he had unique knowledge and experience that was of value to the agency.

Mr. Swerda requested to withdraw from his separation agreement in a letter dated May 16, 1996, citing an unexpected change in his financial circumstances. Mr. Swerda stated in his letter that he recently had bought a new house and would not be able to afford his house payments and other obligations once he retired. Mr. Swerda explained that these circumstances were unexpected because, after he had committed to buying the house, he learned that he had less money to put towards a down payment than he originally had thought, and his wife learned that she was going to be released from her private-sector job as part of a down-sizing effort.

The agency denied Petitioners' requests on administrative grounds. In support of its decisions, the agency referenced its need to reduce its workforce and noted that it viewed the buyout program as the primary means of achieving that goal while minimizing administrative disruption. The agency stated that its policy was "to approve only those few withdrawals which reflect the most extreme circumstances." Because the agency did not find either of Petitioners' circumstances to be extraordinary, it decided to enforce the terms of the

separation agreements, although it did extend Petitioners' separation dates to March 31, 1997.

In due course, Petitioners separated from the agency and received voluntary separation incentive payments in accordance with their agreements.

## II

Petitioners appealed the denial of their withdrawal requests to the Board. In an initial decision, the administrative judge ("AJ") to whom the case was assigned reversed the agency's decision and ordered the agency to reinstate Petitioners. *See Green v. General Servs. Admin.*, Nos. DE–0752–97–0524–I–1, –0523–I–1, –0525–I–1 (Oct. 31, 1997) (*"Green I"*). The AJ applied 5 C.F.R. § 715.202(b), which permits an agency to deny an employee's request to withdraw his resignation only if the agency has a valid reason for the denial. *See id.*, slip op. at 7. The AJ determined that the agency had not proved that it had a valid reason for denying Petitioners' requests. *See id.* Specifically, the AJ concluded that the agency had not proved that granting the requests would have resulted in administrative disruption or would have required the displacement of other employees. *See id.*, slip op. at 17. In reaching this conclusion, the AJ rejected the agency's argument that its articulated policy of granting withdrawal requests in only limited circumstances provided a valid reason for denying Petitioners' requests. *See id.*

The agency petitioned the Board for review of the initial decision. The Board granted the petition and then reversed the AJ's decision and dismissed Petitioners' appeals for lack of jurisdiction. *See Green II*, 82 M.S.P.R. at 48. The Board, like the AJ, applied 5 C.F.R. § 715.202(b). *See id.*, 82 M.S.P.R. at 51–52. The Board cited *Perrine v. General Servs. Admin.*, 81 M.S.P.R. 155 (1999), for the proposition that the separation agreements alone did not provide a valid reason for denying the withdrawal requests. *See Green II*, 82

M.S.P.R. at 51–52. The Board nevertheless determined that the agency had established a valid reason for the denials, pointing to the reasons it had relied on in *Perrine*. *See Green II*, 82 M.S.P.R. at 51–52. In *Perrine*, the Board determined that "it was crucial to the success of the [agency's workforce reduction] plan to hold most employees to their buyout commitments." *Perrine*, 81 M.S.P.R. at 163. "[T]he agency thus had a valid reason for denying requests, except under its hardship policy." *Id.* The Board here determined that Petitioners had not satisfied the agency's hardship requirement, finding that "the reasons cited by . . . [Petitioners] were not entirely unforeseeable at the time they signed the Separation Agreements and do not approach the hardship example the Agency gave of the unexpected death of a spouse." *See Green II*, 82 M.S.P.R. at 53. The Board therefore concluded that the agency had properly denied Petitioners' withdrawal requests. *See id.* Because Petitioners' separations were otherwise voluntary, the Board determined that it lacked jurisdiction over their appeals. *See id.*

Petitioners appeal the Board's decision. We have jurisdiction pursuant to 5 U.S.C. § 7703.

## DISCUSSION

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703; *Kewley v. Department of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998).

■ The scope of the Board's jurisdiction is a legal question that we review *de novo*. *See Tretchick v. Department of Transp.*, 109 F.3d 749, 751 (Fed.Cir.1997). "The Board lacks jurisdiction to hear an appeal from an employee who has volun-

tarily resigned." *Id.* However, an employee generally has the right to withdraw his resignation before its effective date. *See id.* Accordingly, if the agency wrongfully denied Petitioners' withdrawal requests, their separations were, in effect, involuntary, and the Board would have jurisdiction over their appeals. *See id.* at 751–52.

I

■ We first address whether 5 C.F.R. § 715.202(b) applies to Petitioners' withdrawal requests. Although both the AJ and the Board applied this regulation, the agency argues that this regulation does not govern Petitioners' withdrawal requests. Specifically, the agency argues that 5 C.F.R. § 715.202(b) applies only when 5 C.F.R. § 715.202(a) applies, and that 5 C.F.R. § 715.202(a) does not apply when a separation agreement is in place. We disagree.

The text of 5 C.F.R. § 715.202 is as follows:

**Resignation**

(a) General. An employee is free to resign at any time, to set the effective date of his resignation, and to have his reasons for resigning entered in his official records.

(b) Withdrawal of resignation. An agency may permit an employee to withdraw his resignation at any time before it has become effective. An agency may decline a request to withdraw a resignation before its effective date only when the agency has a valid reason and explains that reason to the employee. A valid reason includes, but is not limited to, administrative disruption or the hiring or commitment to hire a replacement. Avoidance of adverse action proceedings is not a valid reason.

The agency contends that, once an employee has entered into a voluntary separation agreement, he is no longer "free to resign at any time . . . [or free] to set the effective date of his resignation," as set forth in 5 C.F.R. § 715.202(a). Instead,

the agency argues, he is bound by the terms of the agreement. We see no difference, however, between the circumstances of an employee who is considering whether to enter into a voluntary separation agreement and an employee who is considering whether to resign voluntarily. Both employees are free to resign or not. Even if the voluntary separation agreement requires the employee to separate on a certain date, an employee who chooses to enter into the agreement is, in effect, choosing that date as his separation date. Moreover, Petitioners' separation agreements contained blanks, apparently completed by Petitioners, for "Desired Date of Separation." This indicates that Petitioners had some control over their separation dates. We also see no difference between the circumstances of an employee who has entered into a voluntary separation agreement and an employee who has tendered his resignation. Both have decided to leave their positions and have set effective dates for their departures. We therefore reject the agency's argument that Petitioners are not encompassed by section 715.202(a), and conclude that Petitioners' withdrawal requests are governed by section 715.202(b). This conclusion is consistent with our decision in *Tretchick.* There, we applied 5 C.F.R. § 715.202(b) where the employee had entered into a voluntary separation agreement as she was required to do under the terms of a settlement agreement. *See Tretchick,* 109 F.3d at 751–52.

## II

Having decided that 5 C.F.R. § 715.202(b) applies to Petitioners' withdrawal requests, we must determine whether the agency had a valid reason for denying the requests. *See* 5 C.F.R. § 715.202(b).

Petitioners argue that the agency must demonstrate that the granting of their withdrawal requests would have led to administrative disruption. Petitioners assert that the agency cannot meet this burden because it would have been able to meet its workforce reduction goals even if it had

permitted them to withdraw from their separation agreements and remain employed. The agency responds that its policy of granting withdrawal requests under only extraordinary circumstances gave it a valid reason for denying Petitioners' withdrawal requests.

█ In *Tretchick,* we stated that "[t]he employee's commitment to resign under the terms of a settlement agreement is a valid reason for an agency to refuse to accept her withdrawal." *Tretchick,* 109 F.3d at 751. Although there are differences between a settlement agreement and Petitioners' voluntary separation agreements, *see Perrine,* 81 M.S.P.R. at 166 & n. * (Slavet, Vice Chair, concurring), we see no reason why the separation agreements at issue here should not provide a valid reason supporting the agency's denial of Petitioners' withdrawal requests. When the agency initiated its buyout programs, it notified its employees that a decision to enter into a separation agreement should not be made lightly. Indeed, it emphasized several times in several different publications relating to the programs that employees would be held to the agreements unless they met the agency's hardship requirement. Thus, unlike an employee who merely tenders his resignation, Petitioners entered into the separation agreements knowing that they would be held to them unless extraordinary circumstances arose before their separation dates. This limitation on the ability to withdraw from the agreements was, in effect, a term of the separation agreements. The agency therefore had a valid reason for denying Petitioners' withdrawal requests unless Petitioners satisfied the agency's hardship requirement.

## III

█ The Board interpreted 5 C.F.R. § 715.202(b) as giving the agency discretion in deciding whether an employee has satisfied its hardship requirement and, therefore, in deciding whether to deny an employee's withdrawal request. *See*

*Green II*, 82 M.S.P.R. at 53. In our view, the Board's determination that the regulation vests the agency with discretion as to whether to permit an employee to withdraw from a separation agreement is correct, because the regulation uses the word "may." *See* 5 C.F.R. § 715.202(b) ("An agency *may* permit an employee to withdraw his resignation.... An agency *may* decline a request to withdraw a resignation ..." (emphasis added).); *Hubbard v. Merit Sys. Protection Bd.*, 205 F.3d 1315 (Fed. Cir.2000) ("Words such as 'may' ... show a[n] ... intent to provide ... broad discretion" (internal quotations omitted).). The Board determined that the agency did not abuse its discretion when it concluded that Petitioners did not satisfy the agency's hardship requirement. Having carefully considered the facts of the case, we see no reason to disturb that determination.

■ Mr. Green argues that he should have been permitted to withdraw from his separation agreement because his wife had passed away shortly before he submitted his withdrawal request. However, Mr. Green did not rely on his wife's death as the basis for his request. Even in his July 26 letter he emphasized his value to the agency as the reason he should be permitted to remain employed. Moreover, Mr. Green acknowledged that his wife's death did not have any significant impact on his financial situation. Under these circumstances, we see no error in the Board's decision that the agency did not abuse its discretion when it determined that Mr. Green had not satisfied the agency's hardship requirement.

■ Mr. Swerda argues that he should have been permitted to withdraw from his separation agreement because of his changed financial circumstances. Mr. Swerda's circumstances, however, were largely of his own making. Mr. Swerda and his wife purchased their new house after he had entered into the separation agreement, when he should have known that his retirement would have an impact on his financial condition. Mr. Swerda's request letter admits that he could "make

it" without his reemployment, but would likely have to get a new job or sell the house. Under these circumstances, we cannot fault the Board's decision to uphold the agency's determination that Mr. Swerda's financial situation did not rise to the level of "extraordinary circumstances" or "extreme hardship" that would have required the agency to grant his withdrawal request.

## CONCLUSION

The Board's decision that the agency did not abuse its discretion when it denied Petitioners' requests to withdraw from their separation agreements is free of legal error and is supported by substantial evidence. Because Petitioners' separations were otherwise voluntary, the Board lacked jurisdiction over their appeals. We therefore affirm the final decision of the Board that dismissed Petitioners' appeals for lack of jurisdiction.

*AFFIRMED*

Each party shall bear its own costs.