UNITED STATES of America,
Plaintiff-Appellee,

v.

FRED A. ARNOLD, INC.,
Defendant-Appellant.

No. 75–3048.

United States Court of Appeals,
Ninth Circuit.

April 13, 1978.

Barbara Ashley Phillips (argued), San Francisco, Cal., for defendant-appellant.

William S. Estabrook (argued), Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WRIGHT and TANG, Circuit Judges, and THOMPSON,* District Judge.

PER CURIAM:

The United States brought this action under § 3505(a) of the Internal Revenue Code, seeking to collect from Fred A. Arnold, Inc., a general contractor, the withholding and F.I.C.A. taxes which its subcontractor, Pannell Brothers Construction Co., failed to pay on behalf of its employees. Arnold appeals from the district court's grant of the government's motion for summary judgment. 400 F.Supp. 1118. This court has jurisdiction under 28 U.S.C. § 1291.

■ The defendant demanded a trial by jury, to which it was entitled in this kind of action. *United States v. J. B. Williams Co.,* 498 F.2d 414 (2d Cir. 1974); *Damsky v. Zavatt,* 289 F.2d 46 (2d Cir. 1961). After substantial discovery, the United States filed a motion for summary judgment on the day the trial was to begin. The court heard oral argument that afternoon, and gave appellant twenty-four hours to file a response. Appellant responded and filed a cross-motion for summary judgment. The district court aborted the jury trial when it granted the government's motion.

■ We question whether this case was an appropriate one for summary judgment. It is well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a genuine issue as to any material fact exists. Fed.R. Civ.P. 56(c); *Eby v. Reb Realty, Inc.,* 495 F.2d 646 (9th Cir. 1974); *Brawner v. Pearl Assurance Co.,* 267 F.2d 45 (9th Cir. 1956); *Hycon Mfg. Co. v. H. Koch & Sons,* 219 F.2d 353 (9th Cir. 1955), *cert. denied,* 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278 (1955); Wright & Miller, Federal Practice and Procedure: Civil § 2720.

■ The record supporting the cross-motions for summary judgment was very complete. It consisted of stipulated facts in the pre-trial order, depositions of every principal witness, answers to written interrogatories, and responses to requests for admission and exhibits (including the business records relating to and effectuating the transactions alleged in the complaint). Under proper circumstances a hearing on a complete record under cross-motions for summary judgment may amount to a stipulation of the parties to a court trial on an agreed written record. *Starsky v. Wil-*

* Hon. Bruce R. Thompson of the District of Nevada.

*liams,* 512 F.2d 109 (9th Cir. 1975). In the instant case, however, neither party, explicitly or inferentially, stipulated to a court trial. To the contrary, defendant demanded a jury trial. Indeed, the jury had already been empaneled when the government moved for summary judgment. We cannot find a waiver of the right to jury trial under these circumstances.

This case presents a situation surely not uncommon in the construction industry. On a contract for the United States Navy, Arnold subcontracted the framing work to Pannell. Pannell eventually requested that progress payments be made weekly so as to alleviate cash flow problems, rather than biweekly or monthly, as had been the case up to that point. Arnold agreed to the proposed payment schedule, provided the funds were expended on Arnold's project rather than on other Pannell jobs. A special checking account was set up in the name of Pannell Brothers.[1] The funds advanced were to be deposited to this account and an Arnold supervisor was to cosign all withdrawals to ensure that the funds were not diverted to other Pannell jobs. Arnold paid amounts sufficient to cover more than the net payroll. Pannell drew on the account for purposes other than payroll, including the partnership draw. Arnold's supervisors apparently never refused to countersign a withdrawal.

Eventually, Pannell defaulted on the contract and went into bankruptcy. At that point Arnold learned that the bank signature card permitted funds to be withdrawn on the signature of the two Arnold supervisors. They withdrew $4,400, using it to pay wages to Pannell employees for the payroll period ending on the day of default. The taxes owing on those wages were paid, and from that point on, Arnold paid workers to finish the subcontract work, remitting withholding and F.I.C.A. taxes to the government on the wages it paid. The only taxes in question are those related to the wages paid out of the special account prior to Pannell's default.

Before 1966 only "employers" were liable for withholding taxes. This lead to problems, especially in the construction industry. A financially-strapped subcontractor would go to a lender, often his general contractor, for interim financing. The lender, wishing to minimize costs, would supply only the net payroll funds. The employees received credit as if the withholding taxes had been paid. The subcontractor-employer remained liable under 26 U.S.C. §§ 3102(b) and 3402, but recourse against him frequently proved fruitless. See *generally* 9 Merten's Law of Federal Income Taxation § 54.66.20; *United States v. Algernon Blair, Inc.,* 441 F.2d 1379, 1381 (5th Cir. 1971).

In 1966, Congress enacted § 3505 of the Code.[2] It provides that a surety, lender, or

---

1. Arnold did have another contract with the United States Navy on which Pannell was the framing subcontractor, and which also involved a special account similar to the one used on this job. Pannell completed that job before its bankruptcy, however, and withholding taxes on wages on that job are not at issue.

2. "(a) Direct payment by third parties.—For purposes of sections 3102, 3202, 3402, and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to any employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer."

"(b) Personal liability where funds are supplied.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose."

other person who directly or indirectly pays another's employees is secondarily liable for F.I.C.A. and withholding taxes.

Under § 3505(b), when a surety, lender, or other person advances funds to the employer, he is liable for the employer's withholding taxes if he knows that the funds are to be used specifically for the payment of wages and if he has actual notice or knowledge that the employer does not intend to, or will not be able to, make payment of the withholding taxes.

In contrast, under § 3505(a), a person is automatically liable, whatever his knowledge or notice, if he "directly" pays the employees. The intention of Congress was to prevent sureties, lenders, or other persons from assuming responsibility for net wages, excluding taxes. If payroll responsibility is assumed, it must include responsibility for the taxes tied to the wages.

■ To decide this appeal we must determine what constitutes "direct payment" for the purposes of § 3505(a). In our opinion, in order to be direct payment the payor must have (1) the ability to control the funds, and (2) the right and legal authority to exercise that control.

■ With respect to the first prong: "the ability to control the funds", the inferences which might be drawn from the evidence are conflicting. It is not clear whether Arnold sent checks to Pannell Brothers, and left it to the good faith of the payee to deposit the checks in the restricted account, or whether Arnold itself deposited the checks. The depositions indicate that the deposit books were kept in the Arnold field office, an assertion which finds support in the defendant's admission that, at the time the plaintiff's interrogatories were propounded, it had possession of the deposit books. This fact alone is not dispositive, because Pannell Brothers did not maintain an office at the worksite, but worked out of the Arnold field office there. Nor are the deposit slips, reproduced in Exhibit 11 to the deposition of Fred A. Arnold, particularly helpful. Most were standard slips, bearing the printed name of Pannell Brothers Construction Co. One was a counter-deposit slip which bears the name of "Fred A. Arnold" as the depositor, rather than the usual Pannell Brothers designation. Of the seventeen Arnold checks (Exhibit 5) deposited, only three appear to have been endorsed by a Pannell Brothers' representative. In addition, the depositions of John and Jesse Pannell both intimate that Arnold employees were the ones who carried the checks to the bank. Each check also carries a typewritten "for deposit only Account # 011183" (number of Del Monte account) notation on its back. Nowhere in the depositions or the record have the parties developed the information of who placed this endorsement on the checks. The typeface appears to be the same as that which appears on the face of the checks. A disputed issue of material fact thus exists with respect to whether Arnold retained and maintained the ability to control the funds.

Also disputed is whether Arnold had "the right and legal authority to exercise that control." At the time Arnold took over the work and the bank account it learned that under the bank signature card funds could be withdrawn under the signature of two Arnold employees without Pannell participation. It is important to a proper disposition of the case to know whether the agreement between Arnold and Pannell did require both an Arnold and a Pannell signature for withdrawals. Also, the exact purpose of the restricted account under the agreement of the parties is important. If it was contemplated that Arnold signatories would "rubber stamp" checks prepared by Pannell which on their face were for job connected expenses, that is one thing, but if it was contemplated that Arnold would have a more pervasive control of the disbursements, albeit by the reservation of a veto power, the situation would be different.

The action is remanded for trial.