**STRUCTURAL CONCEPTS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1141 C.**

United States Court of Federal Claims.

Jan. 24, 2012.

Thomas J. Hirsh, Ocean, NJ, for plaintiff.

Jeffrey D. Klingman, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Washington, DC, for defendant. Larry M. Anderson, United States Department of the Air Force, Joint Base Andrews, MD, of counsel.

**OPINION**

BUSH, Judge.

Before the court are the parties' cross-motions for partial summary judgment, filed pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The motions have been fully briefed, and oral argument was neither requested by the parties nor deemed necessary by the court. For the reasons set forth below, plaintiff's and defendant's motions are denied.

**BACKGROUND**[1]

Plaintiff Structural Concepts, Inc. (SCI) and the United States Air Force entered into

---

**1.** The facts recited herein are taken from the parties' filings. The court makes no findings of fact in this opinion.

a contract in 1999 to alter and repair a building on McGuire Air Force Base (McGuire AFB). Compl. ¶¶ 3, 7; Def.'s Resp. to Pl.'s Facts ¶ 3. In 2004, plaintiff filed a claim with the contracting officer for approximately $1.2 million, asserting that it was owed additional compensation due to government-caused delay and other actions by the government. Compl. ¶¶ 11–12, 17. According to plaintiff, the Air Force assessed liquidated damages in the amount of $776,448 against SCI "as a result of SCI's claim [for $1.2 million]." *Id.* ¶ 13. The contracting officer denied SCI's claim and assessed liquidated damages against SCI in the amount of $776,448. *Id.* ¶¶ 15–16, Exs. A–B.

In July of 2004 plaintiff filed its complaint in this court, asserting a claim against the United States for approximately $1.2 million, and requesting remission of the liquidated damages assessed against SCI by the Air Force. Compl. at 4. The government counterclaimed for $776,448 in liquidated damages. Def.'s Answer ¶¶ 22, 27. Once discovery and unsuccessful settlement negotiations were concluded, the parties moved for partial summary judgment as to the assessment of liquidated damages.

Performance of Contract No. F28609–99–0005, for alterations to Building 2704 on McGuire AFB, did not go smoothly. Although the contract appears to have been awarded in November 1998, the notice to proceed did not issue until June 30, 1999. Pl.'s Facts ¶¶ 3, 8. The project was scheduled to be performed in 360 calendar days, so that it would be completed by June 24, 2000. *Id.* ¶¶ 8, 11. In fact, project completion did not occur until late 2003 or early 2004.

In the complaint, plaintiff asserts that the government delayed acceptance of SCI's bid, delayed the start of performance, provided defective specifications, plans and drawings, delayed and suspended SCI's work on the project, and failed to process payments to SCI in a timely fashion. Compl. ¶ 9. Defendant concedes that the government suspended work on the contract, Def.'s Facts ¶ 2, and that the contract was modified several times to extend the completion date, *id.* ¶¶ 3, 5, 7; Def.'s Resp. to Pl.'s Facts ¶ 11. The court reserves further examination of the factual background of this case for the analysis section of this opinion.

## DISCUSSION

### I. Standard of Review for RCFC 56 Cross–Motions

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir.1987) (internal quotations and citations omitted). The moving party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A summary judgment "motion may, and should, be granted so long as whatever is before the ... court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56[ ], is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting former version of Fed.R.Civ.P. 56(c)). However, the nonmoving party has the burden of producing sufficient evidence that there is a genuine issue of material fact in dispute which would allow a reasonable finder of fact to rule in its favor. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Such evidence need not be admissible at trial; nevertheless, mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Barmag Barmer Maschinenfabrik AG v.*

*Murata Mach., Ltd.,* 731 F.2d 831, 835–36 (Fed.Cir.1984). "The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag,* 731 F.2d at 836. Any evidence presented by the non-movant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Cross-motions for summary judgment "are not an admission that no material facts remain at issue." *Massey v. Del Labs., Inc.;* 118 F.3d 1568, 1573 (Fed.Cir.1997) (citing *United States v. Fred A. Arnold, Inc.,* 573 F.2d 605, 606 (9th Cir.1978)). The parties may focus on different legal principles and allege as undisputed a different set of facts. *Id.* "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Id.*

## II. Analysis

The parties' cross-motions for partial summary judgment address the government's counterclaim for liquidated damages for the delayed completion of the project. In the contracting officer's decision, liquidated damages were calculated at $2022 per day of delay. Compl. Ex. A. The government assessed liquidated damages for 384 days of delay, from December 20, 2002 through January 7, 2004, for a total of $776,448. *Id.* Plaintiff's cross-motion seeks remission of these liquidated damages, whereas the government's cross-motion asks the court to uphold the liquidated damages assessment by the contracting officer. None of plaintiff's other claims, which are based on government-caused delay and other actions of the government and which total approximately $1,200,000, are addressed in the parties' cross-motions for partial summary judgment.

**2.** The court need not decide at this juncture whether the proper liquidated damages calculation for this contract uses *substantial completion,* Pl.'s Reply at 35–38, or *final completion,* Def.'s Mot. at 19–20, as the end-point of the damages

### A. Contested Dates for the Completion Date Specified in the Contract and the Actual Completion Date of the Project

The court notes that liquidated damages are typically calculated using a daily rate multiplied by the days that have elapsed between a contract's specified completion date and the project's actual completion date.[2] The parties differ as to the project completion date specified by the contract. Defendant asserts that December 19, 2002 was the modified contract completion date. Def.'s Answer ¶ 25. Plaintiff appears to assert that the completion date agreed to by the parties was either May 2, 2003, Pl.'s Mot. at 2, or June 14, 2003, Pl.'s Reply at 47.

The parties also disagree as to when the construction project was substantially completed. According to defendant, substantial completion did not occur until January 7, 2004. Answer ¶ 26; Def.'s Mot. at 20. Plaintiff, on the other hand, suggests that the project was substantially completed on either August 8, 2003 or September 15, 2003. Pl.'s Mot. at 2; Pl.'s Reply at 6, 29–30, 37. Thus, according to the contract completion dates and project completion dates championed by the parties in this suit, there is an initial range of potential liquidated damages time periods, ignoring other relevant considerations, from 384 days (from December 19, 2002 to January 7, 2004, as asserted by defendant), Def.'s Answer ¶¶ 25–26, to perhaps 55 days (from June 14, 2003 to August 8, 2003, as plaintiff appears to assert), Pl.'s Reply at 47; Pl.'s Mot. at 2.

### B. Excusable Delay is Fundamental to the Ultimate Resolution of the Government's Liquidated Damages Counterclaim

A fundamental problem prevents the entry of judgment for either party on the government's counterclaim. Liquidated damages may not be assessed for delays in

period. For the purposes of this opinion only, the court utilizes *substantial completion* and *actual completion* as roughly synonymous terms for the end-point of the liquidated damages period discussed by the parties.

the completion of a construction project that are attributable to the government or that are otherwise excusable. *See, e.g., Sauer Inc. v. Danzig,* 224 F.3d 1340, 1347 (Fed.Cir. 2000) ("As a general rule, a party asserting that liquidated damages were improperly assessed bears the burden of showing the extent of the excusable delay to which it is entitled.") (citations omitted). Plaintiff's delay claims against the government, which are not at issue in the parties' cross-motions, are inextricably entwined with plaintiff's defenses against the government's counterclaim for liquidated damages. SCI's delay claims that are proved at trial might reduce the number of days for which liquidated damages could be assessed against SCI.

Even if the court could determine on summary judgment the dates for contract completion and actual completion of the project, the government's right to liquidated damages still would not be determined as a matter of law. Summary judgment is inappropriate because the court cannot logically address the amount of liquidated damages due the government before resolving plaintiff's claims founded on government-caused delay of the contract work. In other words, the government's right to a specific amount of liquidated damages cannot be determined with any certainty until all of plaintiff's government-caused delay claims have been ruled upon by the court.

## C. Plaintiff's Claims Which Will Be Tried Include Damages Caused by Government Delay

The parties informed the court that they are agreed that this case should proceed to trial. Joint Status Report of April 1, 2011, at 1. The parties also informed the court that plaintiff intended to file a motion for partial summary judgment. *Id.* When plaintiff filed its motion, that motion was restricted to a request for summary judgment on the liquidated damages that were the subject of the government's counterclaim. Pl.'s Mot. at 1. Thus, plaintiff's motion does not address most of plaintiff's own claims, which are largely but not exclusively founded on allegations of government-caused delay, because these claims have been reserved for trial.

Defendant's response to plaintiff's motion included the government's own motion for partial summary judgment. Defendant's motion does not address plaintiff's claims in their entirety; instead, it focuses on the government's liquidated damages counterclaim, plaintiff's claim for the remission of liquidated damages, and plaintiff's claim for payment of the "contract balance." Def.'s Mot. at 2. Based on the parties' assertions in their joint status report and in their motions, the court concludes that neither party has fully addressed, in its motion for partial summary judgment, all of plaintiff's claims based on government-caused delay of the project. The court cannot condone the parties' piecemeal litigation approach, one which seeks to resolve allegations of government-caused delay, first, at this time, in cross-motions for partial summary judgment regarding the government's liquidated damages counterclaim, and then again, at trial, when the court will resolve plaintiff's claims for an equitable adjustment of the contract.

■ The court finds it significant that the government agreed that a trial is needed in this case to resolve SCI's claims for an equitable adjustment of this construction contract, the performance of which dragged on for many years. It is also significant that many of SCI's claims are founded upon delays allegedly caused by the government. Compl. ¶ 9. Summary judgment cannot be the appropriate vehicle to decide questions of government-caused delay, as those delays affect the government's right to liquidated damages, when the parties have informed the court that government-caused delay claims will also be reserved for trial.

In the court's experience, liquidated damages claims are more commonly decided after a trial, if a trial of claims related to a construction project is required. *See, e.g., Bell BCI Co. v. United States,* 72 Fed.Cl. 164, 170 (2006) ("The parties likely will present evidence at trial of the extent of the contractor's delay in meeting each of the 14 milestone completion dates, and whether the delays encountered constitute excusable delay under the contract. These are factual issues that cannot be decided on cross-motions for partial summary judgment."); *CEMS, Inc. v.*

*United States*, 59 Fed.Cl. 168, 233 (2003) (relying on trial testimony to rule on plaintiff's claim seeking to "recover liquidated damages withheld by the defendant"); *PCL Constr. Servs., Inc. v. United States*, 53 Fed. Cl. 479, 492 (2002) ("Because of the nature of the plaintiff's claim, the complexities of the contract and the proof adduced at trial by both parties, including the expert reports, the court finds that, based on the record, there can be no clear apportionment of the delay on the contract. Therefore, defendant is not entitled to the liquidated damages claimed, under either the clear apportionment rule, or, as discussed above, under the rule against apportionment."). The court is somewhat perplexed by the parties' attempt to resolve a liquidated damages counterclaim before a trial which would fully explore the facts of this construction project, and which would determine the parties' responsibilities for the delays in completion of that project. The court must deny the parties' motions for this reason. Nonetheless, the court will briefly address the parties' motions and discuss whether, in the absence of this fundamental procedural flaw, these motions for partial summary judgment could be granted.

### D. Plaintiff's Motion Fails

As far as plaintiff's motion is concerned, the court is frustrated in its analysis by several inadequacies in the motion and in its attached appendix of exhibits. The motion contains no table of contents, no table of authorities, no statement of the questions presented, no statement of the case, and no clear statement of the argument, in contravention of RCFC 5.4. The only indications of structure in the brief are these headings: (1) "Preliminary Statement"; (2) "Point I: SCI was justified in suspending contract work between Nov[em]ber 28, 2002 and January 24, 2003 because of the government's failure to make timely contract payments to SCI and SCI was entitled to have the contract term extended for a period equivalent to the aforesaid suspension plus a remobilization period"; (3) "Point II: The discovery of the damage to blower coil units and the delay in issuing the modification approving the extra

work and funding the extra work, at the very least, constituted a concurrent delay for which the government was responsible, thereby preventing the government from charging SCI with liquidated damages from the period the damage was discovered until the work was completed"; and, (3) "[Second?] Point II: Standard of Review." Pl.'s Mot. at 1, 8, 27, 34. Citations to exhibits attached to the motion are often missing or incomplete in plaintiff's motion. The appendix of exhibits attached to plaintiff's motion has no table of contents, and is not consecutively paginated, as is required by RCFC 5.4. Plaintiff's motion could be denied for these inadequacies alone and the court takes this opportunity to caution plaintiff with respect to such deficiencies in any future filings.

More importantly, the documentary record and briefs presented in support of plaintiff's motion fail to assist the court in identifying the absence of any genuine issues of material fact, or in identifying plaintiff's right to judgment as a matter of law. The court cannot discern in plaintiff's motion, for example, any coherent and comprehensive analysis of the relationship between the delays allegedly caused by the government and the 384 days of liquidated damages that are counterclaimed by the government. If plaintiff has presented a logical or consistent argument in this regard, it is buried in an undifferentiated mass of verbiage that resists comprehension. Even if plaintiff's reply brief could be seen to have presented a more extensive analysis of government-caused delays of the contract work than the analysis presented in plaintiff's motion, this brief, too, lacks a coherent and comprehensive analysis of the project schedule and government-caused delays.[3] The court, on this record, cannot grant summary judgment to plaintiff as to the government's counterclaim; plaintiff's motion is denied.

### E. Defendant's Motion Also Fails

Defendant's motion is clearly written and presents a series of well-supported arguments which attempt to secure summary

---

**3.** The court notes that plaintiff's reply brief lacks the table of contents, the table of authorities, and the clear statement of the argument required by RCFC 5.4.

judgment on the government's counterclaim for liquidated damages. Defendant raises jurisdictional arguments against plaintiff's ability to raise certain defenses to the government's counterclaim, as well as arguments specifically rebutting plaintiff's factual and legal contentions regarding the construction project. The court turns first to defendant's jurisdictional arguments, before considering defendant's proposition that the amount of liquidated damages due the government can be decided on its motion for partial summary judgment.

### 1. Jurisdiction
#### a. *Maropakis*

The government relies heavily on a 2010 decision by the United States Court of Appeals for the Federal Circuit: *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323 (Fed.Cir.2010) (*Maropakis*). The holding of *Maropakis* is succinctly stated: "[W]e hold that a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the [Contract Disputes Act, 41 U.S.C.A. §§ 7101–7109 (West Supp. 2011) (CDA)], whether asserting the claim against the government as an affirmative claim or as a defense to a government action." *Id.* at 1331. In *Maropakis*, the contractor could not assert an excusable delay *defense* against the government's liquidated damages counterclaim, because the contractor's own *claim*, for damages caused by government delay, was not formally presented to the contracting officer (CO). *Id.* at 1331–32. The court notes, at the outset, that SCI *did* present a valid CDA claim to the CO requesting damages caused by government-caused delay, placing this plaintiff in a different position than the plaintiff in *Maropakis*. Thus, the *Maropakis* decision provides limited guidance in the case at bar.

Defendant attempts to extend *Maropakis* and states that under that precedent "SCI was required to submit a *separate* claim to the CO providing adequate notice of the total number of days requested in extension as a defense to the Government's claim assessing liquidated damages." Def.'s Reply at 2 (emphasis supplied). Certainly, SCI could have presented a separate claim to the CO offering the totality of its defenses against the liquidated damages assessed against SCI in his March 19, 2004 decision. However, *Maropakis* does not directly address the question of whether a contractor who has already filed a valid CDA claim for damages caused by government delay must necessarily then file a *separate* claim once it has learned the full extent of the government's liquidated damages assessment. That question is better answered by other precedent.

#### b. *Scott Timber*

The Federal Circuit has held that CDA claims filed in this court are not required to "ri[gidly] adhere[ ] to the exact language or structure of the original administrative CDA claim" presented to the CO. *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir.2003). It is enough that the original claim and the claim in this court "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery." *Id.* Pursuant to the *Scott Timber* standard, it appears to the court that much of SCI's defense against the government's counterclaim for liquidated damages was presented to the CO, and is on sound jurisdictional footing. Although the claim presented to the CO was largely focused on delay damages, the discussion of government-caused delay in that claim is specific as to the amount of government-caused delay encountered by the contractor.

Defendant argues, however, that because the claim presented to the CO did not specifically claim damages for any delays caused by the government after August 1, 2003, "SCI did not provide the CO adequate notice that it was ... seeking a time extension beyond August 1, 2003." Def.'s Mot. at 11. Defendant suggests that SCI's claim before the CO "could be construed as a request to extend the contract to August 1, 2003," and no later. Def.'s Reply at 2. Thus, according to defendant, "the Government is entitled to partial summary judgment upon the liquidated damages [counter]claim[ ] for the 158–day period of August 2, 2003 to January 7, 2004." Def.'s Mot. at 11–12.

As plaintiff points out, however, SCI included in its claim submitted to the CO correspondence containing allegations of government delay occurring after August 1, 2003. Pl.'s Reply at 6. Although these allegations of government delay occurring after August 1, 2003 are not highlighted in any effective way, the court is reluctant to bar plaintiff from presenting any challenge to government delays occurring after August 1, 2003 when the claim before the CO contained references to such conduct. *See Pub. Warehousing Co.*, ASBCA No. 56022, 11–2 BCA ¶ 34788 (June 22, 2011) (noting that in CDA cases, the Armed Services Board of Contract Appeals (ASBCA) "may examine the correspondence and discussions between the parties 'to decide whether [a contractor's] complaint goes beyond the scope of its claim' ") (citations omitted); *see also Mendenhall v. United States*, 20 Cl.Ct. 78, 83 (1990) (noting that "the CDA simply does not require that this court interpret plaintiff's [claim] letter in a vacuum"). Here, plaintiff specifically highlighted three periods of government-caused delay in its claim presented to the CO, all ending before or on August 1, 2003, and also attached correspondence to this claim alleging that further government-caused delay had occurred after August 1, 2003. In the context of the protracted delays of this particular construction project, and in the context of the ongoing discussions and disputes that occurred after August 1, 2003, plaintiff's defenses based on government-caused delay allegedly occurring after August 1, 2003 form part of its claim submitted to the CO. This court has jurisdiction to consider plaintiff's defenses to all of the liquidated damages asserted by defendant.[4]

## 2. Genuine Issues of Material Fact Preclude Summary Judgment on the Government's Counterclaim for Liquidated Damages

■ Both parties bear particular burdens with respect to the government's counterclaim for liquidated damages. The government bears the initial burden of showing that project completion occurred after the completion date set forth in the contract, and of showing that the time-period for the assessment of liquidated damages is accurate. *George Sollitt Constr. Co. v. United States*, 64 Fed.Cl. 229, 243 (2005) (citation omitted). Plaintiff then bears the burden of showing that liquidated damages were improperly assessed because of excusable delay, and of showing the extent of that excusable delay. *Sauer*, 224 F.3d at 1347.

The court notes that defendant's motion requests partial summary judgment for specific amounts of liquidated damages owed to the government. The proposed amounts of liquidated damages upon which the government seeks partial summary judgment are based on particular time-periods, for which defendant asserts there is no genuine factual dispute preventing the entry of judgment in the government's favor. These particular time-periods include: (1) liquidated damages for 384 days (December 20, 2002 through January 7, 2004, or $776,448), Def.'s Mot. at 21, 23; Def.'s Reply at 10; (2) liquidated damages for 158 days (August 2, 2003 through January 7, 2004, or $319,476), Def.'s Mot. at 12; Def.'s Reply at 2; (3) liquidated damages for 114 days (September 16, 2003 through January 7, 2004, or $230,508), Def.'s Reply at 8; (4) liquidated damages for 66 days (June 29, 2002 through September 2, 2002, or $133,452), Def.'s Reply at 9.

Plaintiff's attempts to identify genuine issues of material fact related to these particular time-periods are not easy to summarize, due to the defects in plaintiff's briefing noted earlier. The court observes, however, that plaintiff has alleged numerous instances of government action or inaction which may have delayed completion of the contract

---

4. Defendant similarly asks the court to bar plaintiff, on jurisdictional grounds, from presenting arguments regarding a material breach of the contract by the government. Def.'s Mot. at 11. SCI's arguments in this regard are within the scope of the operative facts of plaintiff's claim presented to the CO, and may be asserted in this case pursuant to the precedent of *Scott Timber*. As to whether certain of plaintiff's arguments are barred for not having been presented as affirmative defenses to the government's counterclaim, Def.'s Reply at 5 & n. 3, the court notes that SCI's arguments in this regard may have relevance to both SCI's delay claims and the government's counterclaim. Defendant's procedural challenge to these arguments may be renewed in its pre-trial filings.

work. For example, plaintiff asserts that the government's litigation expert found that the Air Force "was responsible for over two years of delay and that a combination of government-caused delay and excusable delays lasted for a period of 2–1/2 years." Pl.'s Mot. at 1. Plaintiff also states that the government caused delay of the project when it shut off heat to the building and certain pipes froze. *Id.* at 5. Finally, plaintiff's motion discusses a pay dispute that, in plaintiff's view, triggered an excusable delay on the part of plaintiff. *Id.* at 4.

Plaintiff's reply brief discusses, along with other topics, the disputes over the contract completion date and the project's actual completion date. Among other factual assertions, plaintiff states that the government's litigation expert found that the project's substantial completion date was September 15, 2003. Pl.'s Reply at 30–31. SCI also argues that an agreement was reached to extend the contract completion date to June 14, 2003. *Id.* at 19–29. In addition, plaintiff's reply brief provides more detail as to SCI's allegations of government-caused delay, whether these allegations involve pay disputes or work on Building 2704.

The court notes that judicial review of a liquidated damages assessment is fact-intensive. *E.g., Bell BCI*, 72 Fed.Cl. at 170. Indeed, *Sauer*, the seminal Federal Circuit case on the assessment of liquidated damages, reviewed an evidentiary record created when the ASBCA held a consolidated hearing to decide delay and disruption claims *and* a remission of liquidated damages claim brought by the contractor. 224 F.3d at 1344. Here, too, the government's motion for partial summary judgment demands a fact-intensive inquiry.[5] The court finds that there are genuine issues of material fact as to the span of time between the contract completion date and the actual completion date of the project, and as to the amount, if any, of excusable delay which would limit the assessment of liquidated damages against SCI. The record before the court does not provide a clear enough picture of this construction project to determine the government's right to any amount of liquidated damages as a matter of law.

## CONCLUSION

The court cannot grant either party's request for partial summary judgment on the government's counterclaim for liquidated damages before addressing plaintiff's claims based on government-caused delay. Because the resolution of plaintiff's delay-based claims has been deferred until trial, the court must similarly defer resolution of the government's liquidated damages counterclaim until trial. Furthermore, genuine issues of material fact prevent a determination of the proper amount of liquidated damages, if any, due the government. The court therefore denies the parties' cross-motions for partial summary judgment.

Accordingly, it is hereby **ORDERED** that:

(1) Plaintiff's Motion for Partial Summary Judgment, filed June 16, 2011, is **DENIED**;

(2) Defendant's Cross–Motion for Partial Summary Judgment, filed August 5, 2011, is **DENIED**;

(3) On or before **February 15, 2012,** the parties shall **FILE** a **Joint Status Report** proposing a schedule for the exchanges required by RCFC Appendix A, ¶ 13 and the filings required by ¶¶ 14 through 17, with special attention to the time required for the resolution of any motions *in limine* which might narrow the issues that may be contested at trial; and,

(4) Each party shall bear its own costs.

---

5. It would be especially difficult, in the court's view, to grant the government liquidated damages for a particular span of weeks or months, simply because plaintiff failed to allege that instances of government-caused delay occurred during that time-span. It is an understanding of the effect of any and all government-caused delays on the critical path of the construction project that will guide the court's hand when it rules on the government's counterclaim. The court's ruling must be founded on a comprehensive review of all facts relevant to this dispute.