# United States Court of Appeals
## For the First Circuit

No. 16-2359

PHILIP EIL,

Plaintiff, Appellee,

v.

U.S. DRUG ENFORCEMENT ADMINISTRATION,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Jaynie Lilley, Attorney, Appellate Staff, Civil Division,
U.S. Department of Justice, with whom Chad A. Readler, Acting
Assistant Attorney General, Stephen G. Dambruch, Acting United
States Attorney, and Matthew M. Collette, Attorney, Appellate
Staff, Civil Division, were on brief, for appellant.
Jessica S. Jewell, with whom Neal J. McNamara and Nixon
Peabody LLP were on brief, for appellee.

December 22, 2017

**LYNCH, Circuit Judge.** In 2011, Dr. Paul Volkman was tried and convicted of a number of drug-related charges for illegally prescribing pain medication leading to the deaths of at least fourteen individuals. Philip Eil, a journalist writing a book on Dr. Volkman's case, attended portions of that public trial.

In 2012, Eil submitted a Freedom of Information Act ("FOIA") request for the exhibits introduced by the government at Dr. Volkman's criminal trial. The U.S. Drug Enforcement Administration ("DEA") provided thousands of pages of responsive documents, some of which were redacted, but withheld the medical records of Dr. Volkman's living former patients and the death-related records of his deceased former patients.

Eil sued the DEA in the U.S. District Court for the District of Rhode Island to compel disclosure of the withheld records. On cross-motions for summary judgment, the court entered summary judgment for Eil and ordered the DEA to release the records with certain redactions. Eil v. U.S. Drug Enf't Admin., 209 F. Supp. 3d. 480, 489 (D.R.I. 2016). On appeal, the DEA argues that the district court erred in finding that FOIA Exemption 7(C) does not permit the government to withhold the medical and death-related records in their entirety.

We conclude that the district court's balancing of the public interest in disclosure against the relevant privacy interests was flawed because the court applied the wrong standard.

- 2 -

Applying the correct standard, we reverse, for several reasons. First, the release of the requested records is unlikely to advance a valid public interest, given the amount of relevant information that Eil already has access to. And second, the substantial privacy interests implicated by the records would outweigh any public interest in disclosure.

## I. **Background**

A.    Facts

In 2011, Dr. Volkman was tried and convicted of a number of drug-related charges for unlawfully disbursing pain medication resulting in the deaths of at least fourteen people. The U.S. District Court for the Southern District of Ohio sentenced Dr. Volkman to four consecutive life terms of imprisonment. At trial, the government presented seventy witnesses and introduced over 220 exhibits, most of which consisted of medical records of Dr. Volkman's former patients. The government did not seek to have these records sealed and did not redact the names and other personally identifiable information of the former patients. Nor did the trial court, on its own, seal the records or require any redaction. The transcript from the criminal trial, which includes witness and expert testimony, as well as a list describing each trial exhibit, is available on the district court's Public Access to Court Electronic Records ("PACER") system, which is "an electronic public access service that allows users to obtain case

and docket information online," Public Access to Court Electronic Records, United States Courts, https://www.pacer.gov/ (last visited Oct. 13, 2017). Also publicly available are the parties' appellate briefing, the appellate decision, and portions of trial exhibits that were part of the appellate record, including portions of certain medical records.

In 2012, Eil requested access to the criminal trial exhibits from the Clerk of the U.S. District Court for the Southern District of Ohio, the Clerk of the U.S. Court of Appeals for the Sixth Circuit, the U.S. Attorney's Office, and the district court judge who presided over Dr. Volkman's trial. All four denied his request. The U.S. Attorney's Office and the district court judge instructed Eil to request the materials he sought through FOIA. Eil filed a FOIA request on February 1, 2012 with the Executive Office of the United States Attorneys ("EOUSA"), seeking all 220 exhibits introduced by the government at Dr. Volkman's trial. Nine months later, the EOUSA transferred the request to the DEA.

Since receiving Eil's request, the DEA has released over 19,500 pages of responsive records, some of which have been redacted to exclude identifying information and personally sensitive information. At issue on appeal is the DEA's decision to withhold two types of records in their entirety: (1) medical records of approximately twenty-seven living former patients who

were named in the trial transcript, and (2) records relating to the circumstances of death of deceased former patients.

The withheld medical records, large portions of which were created by other medical providers before the patients sought treatment from Dr. Volkman, contain sensitive medical history and other information, including about mental illnesses, learning disabilities, birth defects, illicit drug use, pregnancy terminations, domestic-violence history, impairment of bodily functions, sexual activity, and the patients' family members. The withheld death-related records include autopsy reports, postmortem reports, toxicology reports, and photographs of the deceased patients. The DEA withheld the medical records to protect the privacy interests of the living individuals to whom the records pertain, and it withheld the death-related records to protect the privacy interests of both the deceased and their relatives.[1]

B.   District Court Proceedings

Dissatisfied with the DEA's disclosures, Eil filed suit against the DEA in the U.S. District Court for the District of Rhode Island to obtain access to the withheld records. After considering the parties' cross-motions for summary judgment, the district court entered summary judgment for Eil and ordered the

---

[1]   The DEA did, however, release the medical records of the deceased patients as well as the medical records of living patients who cannot be readily identified from the trial transcript.

government to disclose all of the exhibits admitted into evidence during Dr. Volkman's trial, including the withheld medical and death-related records. Eil, 209 F. Supp. 3d at 489. However, the district court permitted the DEA to redact from the exhibits identifying information of criminal investigators, DEA numbers, trial exhibit numbers, and "highly personal information of no consequence to the trial or conviction of Dr. Volkman," including the "names, social security numbers, addresses, telephone numbers, dates of birth, medical and tax record numbers, and insurance numbers" of former patients. Id. The DEA protests on appeal that these redactions are inadequate to protect the privacy interests of those involved and that records of particular patients may still be readily identified.

## II. Analysis

A district court's grant of summary judgment in a FOIA case is subject to de novo review. Stalcup v. CIA, 768 F.3d 65, 69 (1st Cir. 2014) (citing Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 250 (1st Cir. 2013)).

A.   FOIA Exemption 7(C) Balancing Test

As the Supreme Court has noted, "[t]he statute known as the FOIA is actually a part of the Administrative Procedure Act (APA)." U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754 (1989). In particular, the APA requires "each agency, upon any request for records which . . .

- 6 -

reasonably describes such records" to "make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA thus applies only to "agenc[ies]," which the APA expressly defines to exclude "the courts of the United States." Id. § 551(1)(B); see also Union Leader Corp. v. U.S. Dep't of Homeland Sec., 749 F.3d 45, 56 n.8 (1st Cir. 2014) (noting that FOIA "applies only to federal executive branch agencies" (quoting Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 83 (1st Cir. 1997))).

FOIA includes a number of exemptions that allow agencies to withhold certain documents from release. The relevant exemption here is Exemption 7(C), which enables the government to withhold information "compiled for law enforcement purposes" to the extent that the production of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[2] 5 U.S.C. § 552(b)(7)(C). Because FOIA's purpose is to "expose the operations of federal agencies 'to the light of public scrutiny,'" Moffat, 716 F.3d at 250 (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)), its exemptions are

---

[2] Another FOIA exemption, Exemption 6, allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We limit our analysis to Exemption 7(C) because "all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." Moffatt, 716 F.3d at 250 n.4 (quoting Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011)).

"construed narrowly, with all doubts resolved in favor of disclosure," id. (citing Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 438 (1st Cir. 2006)).

To determine whether the government may rely on Exemption 7(C) to withhold documents, we "balance the privacy interest at stake in revealing the materials with the public interest in their release." Carpenter, 470 F.3d at 438 (citing Reporters Comm., 489 U.S. at 762; Maynard v. CIA, 986 F.2d 547, 566 (1st Cir. 1993)). Where, as here, the subject of the FOIA request involves "private citizen[s] and . . . the information is in the Government's control as a compilation," the privacy interest is at its "apex" while the public interest in disclosure is at its "nadir." Reporters Comm., 489 U.S. at 780. And when a legitimate privacy interest is implicated, the party seeking disclosure must show (1) that there is a "significant" public interest in disclosure, and (2) that the requested information is "likely to advance that interest." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

In balancing the public interest in disclosure with the privacy interests implicated by the requested records, the district court applied the wrong standard. In particular, it stated that "[o]nly the most compelling showing can justify post-trial restriction on disclosure of testimony or documents actually introduced at trial," Eil, 209 F. Supp. 3d at 487 (quoting Poliquin

- 8 -

v. Garden Way, Inc., 989 F.2d 527, 533 (1st Cir. 1993)), and that "it falls to the courts to weigh the presumptively paramount right of the public to know against the competing private interests at stake," id. at 488 (quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987)).  To support its application of these standards, the district court cited cases that concern the public's right to access judicial records but not FOIA cases.  See Poliquin, 989 F.2d at 532-33 (analyzing district court's protective order restricting disclosure of testimony and documents introduced at trial); Standard Fin., 830 F.2d at 410 (dealing with a district court's order unsealing defendants' financial records).

Public access to judicial records is a "common law presumption" rooted in a desire to "allow[] the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system,'" Standard Fin., 830 F.2d at 410 (quoting In the Matter of Cont'l Illinois Sec. Litig., 732 F.2d 1302, 1308 (7th Cir. 1984)).  However, the only public interests recognized by FOIA are those "guided by FOIA's basic purpose, which is 'to open agency action to the light of public scrutiny,'" Moffat, 716 F.3d at 251 (emphasis added) (quoting Reporters Comm., 489 U.S. at 772), and the judiciary is not an agency, see 5 U.S.C. § 551(1)(B).  Moreover, the question of whether Exemption 7(C) allows an agency to withhold documents is a statutory one, and the Supreme Court has expressly recognized

- 9 -

that the privacy interests protected by FOIA "go[] beyond the common law and the Constitution." Favish, 541 U.S. at 170 (citing Reporters Comm., 489 U.S. at 762 n.13). It was thus inappropriate for the district court, in conducting the requisite balancing of interests, to invoke a disclosure-favoring standard based on a common law presumption divorced from the FOIA statutory framework.

FOIA does not require agencies seeking to withhold documents under Exemption 7(C) to provide a "most compelling" reason for doing so. Nor does the statute recognize a "presumptively paramount" public right to know. Rather, it authorizes the DEA to withhold documents as long as their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Neither party disputes that there were legitimate privacy interests at stake. The burden was thus on Eil, as the FOIA requester, to show that disclosure would be likely to further a "significant" public interest. Favish, 541 U.S. at 172.

B. Public Interest in Disclosure

The district court also erred in evaluating the public interest in the disclosure of the requested documents. The court stated that "the public has a strong interest in staying apprised of the government's investigation and the judicial proceedings that led to the conviction of Dr. Volkman." Eil, 209 F. Supp. 3d at 487. To the extent that this statement conflates the public

interest in disclosure under FOIA with a public interest in accessing judicial records, it is erroneous because FOIA does not recognize public interests unrelated to agency functions. See Moffat, 716 F.3d at 251.

The district court erred by sua sponte raising a concern regarding the functioning of the courts in disregard of the fact that Eil made no such claim. Eil has never asserted that the relevant public interest is an interest in monitoring the judiciary. Rather, his focus has always been on the DEA. Specifically, he argued to the district court, and continues to argue on appeal, that the public has a significant interest in finding out how the DEA investigates -- and the federal government prosecutes -- doctors who illegally prescribe pain medication. He also claims that because it is unclear what constitutes an "illegitimate" purpose for prescribing pain medication under the Controlled Substances Act ("CSA"), the public can only understand how the DEA carries out its statutory functions by examining how it applies the provisions of the CSA in a real case. According to Eil, the withheld records contain the very information that the public needs to properly understand the prosecution and conviction of Dr. Volkman, and the potential prosecution of other doctors, because the jury convicted Dr. Volkman on some counts but not others. Citing Union Leader, 749 F.3d at 156, Eil also argues that the DEA acknowledged the public interest in "knowing what it

is up to" by issuing a press release and touting the significance of the case.

On the facts of this case, where there has been substantial disclosure of pertinent information, Eil's arguments are unconvincing. To evaluate whether disclosure is "likely" to further a "significant" public interest, Favish, 541 U.S. at 172, a court must consider whether providing the requested materials "would yield any new information," Stalcup, 768 F.3d at 74 (emphasis added). Voluminous information about Dr. Volkman's trial is already publicly available on PACER and in the appellate record. In addition, the government has released inspection reports, inventory and dispensing logs, correspondence between Dr. Volkman and the government, and video of a physical search of Dr. Volkman's clinic. There is also substantial information available online about the DEA's policies regarding the legitimate medical purposes for issuing prescriptions. See, e.g., Drug Enforcement Admin., Practitioner's Manual: An Informational Outline of the Controlled Substances Act 18-22 (2006) (detailing valid prescription requirements for physicians), https://www.deadiversion.usdoj.gov/pubs/manuals/pract/pract_manu al012508.pdf. Perhaps most importantly, the government has already released the medical records of deceased patients and of

- 12 -

living patients who cannot be readily identified from the trial transcript.[3]

Given the wealth of information that he already has access to, Eil fails to satisfy his burden of showing that the withheld medical and death-related records -- which relate only to the subset of patients that the government believes can be identified using the trial testimony -- would shed any additional light on either the DEA's investigatory conduct in Dr. Volkman's case or the DEA's execution of its statutory mandate more generally.

C.   Privacy Interests

1.   Health and Death-Related Records

It is uncontested that Dr. Volkman's living former patients have significant privacy interests in their medical records, which we have described as "highly personal" and "intimate in nature."  Kurzon v. Dep't of Health & Human Servs., 649 F.2d 65, 68 (1st Cir. 1981).  And it is undisputed that the prior disclosure of these records as trial exhibits does not diminish the privacy interests of the former patients in the records.[4]  As

_____

[3]   The dissent appears to ignore these already-disclosed medical records when discussing the incremental informational value of the withheld records.

[4]   Trial exhibits are generally either returned to the parties or destroyed after trial.  In the Southern District of Ohio, where Dr. Volkman was tried, the applicable local rule states that "[u]nless otherwise ordered by the Court, counsel shall

- 13 -

the district court explicitly acknowledged, and Eil concedes, "[p]rior revelations of exempt information do not destroy an individual's privacy interest," and "[t]he privacy interests the government seeks to uphold remain as strong now as they were before." Eil, 209 F. Supp. 3d at 487-88 (quoting Moffat, 716 F.3d at 251); see also Stalcup, 768 F.3d at 73 (noting that individuals have an "inherent privacy interest irrespective of any government intervention"); Carpenter, 470 F.3d at 440 ("That information has been released to the public domain, especially where the release is limited, has little bearing on the privacy interest." (citing Reporters Comm., 489 U.S. at 763-64)).

However, both Eil and the district court failed to acknowledge the distinct privacy interests of the relatives of Dr. Volkman's deceased patients in the deceased patients' death-related records.[5] In Favish, the Supreme Court held that family members have significant privacy interests in their close relatives' "death-scene images" and the "graphic details"

---

retrieve exhibits . . . filed in an action or offered into evidence within six months after final termination of the action. The Clerk shall dispose of all such material at the expiration of the retrieval period." S.D. Ohio Civ. R. 79.2; see also S.D. Ohio Crim. R. 1.2, 1.3 (indicating that S.D. Ohio Civ. R. 79.2 applies to both civil and criminal actions).

[5] Contrary to Eil's assertions, the DEA did not waive its argument that the deceased patients' family members have distinct privacy interests in the death-related records. The DEA highlighted these privacy interests in its motion for summary judgment and Eil argued that there is "no privacy interest in autopsy reports" in his motion for summary judgment.

- 14 -

surrounding their relatives' deaths. 541 U.S. at 170-71. The Court also implicitly recognized that family members have privacy interests in their deceased relatives' autopsy records. See id. at 168-70 (noting that the common law recognizes the privacy interests of a decedent's immediate relatives in the decedent's autopsy records, and that FOIA provides broader protection for privacy interests than the common law (citing Reid v. Pierce County, 961 P.2d 333, 342 (Wash. 1998))). Given the Supreme Court's recognition of these interests, the district court erred when it failed to address them and instead focused exclusively on the privacy interests of the living former patients whose medical records are the subject of Eil's request. See Eil, 209 F. Supp. 3d at 487-88.

## 2. The District Court's Redaction Order

The district court attempted to protect the privacy interests implicated by Eil's request by allowing the government to redact exhibit numbers and personally identifiable information from the requested records. See id. at 489. The court acknowledged that these redactions could not completely safeguard the privacy interests of the former patients because personally identifiable information can be found in the criminal trial transcript and exhibits in the appellate record, all of which are publicly available. See id. at 488. Nonetheless, the district court stated that the redactions would "minimize[] the privacy

interests implicated" because they would prevent the identities of the former patients from being "easily discerned." Id. at 489.

The permitted redactions do not adequately protect the privacy interests implicated by Eil's request. Because the trial transcript contains the names of Dr. Volkman's former patients along with significant information about their medical histories and their interactions with Dr. Volkman, any interested party could readily identify the individuals associated with the records by connecting the trial testimony to the exhibits. And there may be a significant number of parties interested in making these connections, given that Eil is writing a book about the trial and presumably filed his FOIA request because he intends to include detailed information about the former patients in that book.

As the dissent acknowledges, Eil represented to the district court that the case should be decided on cross-motions for summary judgment, indicating Eil's own recognition that there were no material facts in dispute. Nonetheless, the dissent makes the argument that Eil declined to make by claiming that there is a dispute of material fact regarding whether the district court's redaction order "would create a sufficient obstacle to putting names to the medical records Eil seeks."

Eil notes in his brief that the district court's redactions were meant to "prevent the public from easily matching up the records to names." But he provides no relevant support for

- 16 -

the assertion that the redactions in fact accomplished this goal. The dissent highlights two points that Eil made at oral argument: (1) there were many exhibits in the Volkman trial but little trial testimony about those records, and (2) the trial exhibits include medical records of patients who did not testify. Both of these points are red herrings. The DEA has already made available medical records associated with patients who it believes cannot be readily identified from the trial transcript, along with the medical records of deceased patients. The medical records that have been withheld are only the ones that can be associated with the trial testimony.

Not only did Eil fail to contest the government's argument that any interested party can use information from the trial transcript -- including patient names, patient medical histories, and information about patient interactions with Dr. Volkman -- to identify the individuals associated with the medical records at issue, but he also failed to put into evidence any portion of the trial transcript in support of any possible objection to the government's contention. And it was his burden to do so. See Favish, 541 U.S. at 172.

### III. Conclusion

For the reasons stated above, we reverse the judgment of the district court and hold that FOIA Exemption 7(C) permits the DEA to withhold the medical and death-related records at issue in

their entirety.  We direct the district court to enter summary judgment in the DEA's favor.

**-Dissenting Opinion Follows-**

**TORRUELLA**, <u>Circuit Judge</u> **(Dissenting).** I share in the panel's conclusion that the district court applied the incorrect standard, and that it improperly awarded summary judgment to Eil. I respectfully dissent, however, from its conclusion that summary judgment in favor of the DEA is proper. The parties differ as to whether the redactions that the district court ordered would create a sufficient obstacle to putting names to the medical records Eil seeks. That amounts to a dispute of material fact rendering summary judgment inappropriate.

I am concerned that the panel majority has accepted too readily the government's assertion that an interested party, with the trial transcript in hand, could put names to the redacted medical and death-related records "with only a little effort." That, of course, sounds reasonable, and is certainly plausible. But it is also a factual question inappropriate for us to resolve at this procedural juncture.[6] This, after all, is an appeal from the district court's ruling on cross-motions for summary judgment. And, summary judgment is improper when there exists a genuine dispute of material fact. Fed. R. Civ. P. 56.

Eil contended in his brief that the redaction order would "prevent the public from easily matching up the records to names."

---

[6] Additionally, as we have neither the trial transcript nor the redacted records before us, it is also factually impossible for us to answer this question with any certainty.

- 19 -

At oral argument, he further explained that the sheer volume of the records that the government entered as exhibits in the Volkman trial, combined with the relative paucity of trial testimony about those records, would make connecting the redacted records to specific names a difficult task.  Eil also highlighted that the exhibits in question also included the medical records of patients who did not testify.  As a result, putting names to records would require more than simply matching witnesses' names to documents in a one-to-one fashion.

It is true that Eil -- who only asked us to affirm the district court's grant of summary judgment in his favor -- did not indicate that this factual dispute would make summary judgment improper.  Rather, the parties agreed that it was appropriate for the district court to dispose of this case on summary judgment, and then filed cross-motions for summary judgment.  But, that should not bind our hands here. "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001); see also United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978) ("[T]he filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine

- 20 -

whether disputed issues of material fact are present."); <u>Newark Morning Ledger Co.</u> v. <u>United States</u>, 539 F.2d 929, 932 (3d Cir. 1976) ("[T]he general rule is that cross-motions for summary judgment do not constitute an agreement that if one is rejected the other is warranted.").  Thus, the parties' agreement below should not preclude us from holding that summary judgment is unwarranted for both Eil <u>and</u> the DEA.

And to be clear, I see this fact -- the difficulty with which one could identify the records' subjects -- as highly material.  In my view, it has the potential to tip Exemption 7(C)'s balancing test in either direction.  For example, in the theoretically possible event that identifying the records' subjects turned out to be exceedingly difficult -- perhaps even bordering on impossible -- that would substantially minimize the privacy interests here.  Conversely, if -- as the government contends, and the panel majority accepts -- doing so turned out to be relatively straightforward, the privacy interest would indeed be at its "apex."  <u>See</u> <u>U.S. Dep't of Justice</u> v. <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. 749, 780 (1989).  Depending on the extent to which disclosing the redacted records implicates the privacy interest of their subjects, that interest could potentially come up short against the public interest in disclosing those records.

This is particularly so because the public interest here is perhaps not quite as insubstantial as the panel majority suggests. The majority correctly recognizes that the operative inquiry is not the public interest in the Volkman trial generally. Rather, it is the marginal benefit to that interest that would result from disclosing these records. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004) (information sought must be likely to advance a significant public interest); Stalcup v. CIA, 768 F.3d 65, 74 (1st Cir. 2014) (disclosure unwarranted when it would not "yield any new information").

The panel majority is also right that extensive information about the Volkman trial is already available. But, it fails to satisfactorily address Eil's arguments as to why disclosure of the records at issue here would further advance the public interest in "shed[ding] light on [the DEA's] performance of its statutory duties." Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 440 (1st Cir. 2006). Eil emphasizes that the Volkman trial concerned the application of the Controlled Substances Act ("CSA"), see 21 U.S.C. § 841, to Dr. Volkman's activities in his capacity as a doctor. It is crucial, he stresses, to look to actual prosecutions to understand where the DEA, as Eil puts it, "draws the line between being a doctor and being a drug dealer," because the CSA does not indicate where that boundary lies. Eil further submits that the DEA selected the subset of documents it

- 22 -

included in trial exhibits from a much larger set of documents. Therefore, those exhibits are particularly probative of the DEA's views as to the distinction between legitimate and illegitimate prescription-writing.

In light of these observations, it appears highly likely that the exhibits themselves would yield at least <u>some</u> new information, <u>see</u> <u>Stalcup</u>, 768 F.3d at 74, not contained in the publicly available trial transcript and exhibit list from the Volkman trial, the parties' briefs in the ensuing appeals, or the records that the DEA has provided to Eil.[7] And, in illustrating what the DEA found probative of Volkman's having engaged in criminal behavior, those exhibits necessarily pertain to the public interest in elucidating the DEA's discharge of its statutory duties. To be sure, the DEA's publically available documents outlining its policies regarding prescription-writing are certainly also informative in this respect. However, FOIA's purpose is to allow citizens to know "what their government is up to," not merely what their government <u>says</u> it is up to. <u>Union Leader Corp.</u>, v. <u>U.S. Dep't of Homeland Sec.</u>, 749 F.3d 45, 50 (1st

---

[7] The majority paints the dissent as ignoring the records that the DEA has disclosed. To be sure, the DEA has assured us that it has disclosed those records whose subjects are not readily identifiable, and retained only those records whose subjects risk identification. The disclosure of the former category of records, however, has little, if any, bearing on the disputed factual question of how easily one could identify the subjects of the undisclosed records.

Cir. 2014) (quoting Reporters Comm., 489 U.S. at 773).  The notion that an agency's representations about its activities and policies can supplant the disclosure of documents is rather incongruous with FOIA's purpose.

Now, all of this is not to say that disclosure of the records in question would necessarily advance the public interest so far as to overcome the significant privacy interests at stake.  I wish only to underscore that the public interest in disclosure here is greater than a de minimis interest.

Ultimately though, it is futile to attempt to balance these interests with such a large piece of the puzzle missing.  I cannot join in the panel majority's assessment that "[o]n the facts of this case, where there has been substantial disclosure of pertinent information, Eil's arguments are unconvincing," when this case's precise facts remain uncertain.  I disagree that we should order the district court to enter summary judgment in favor of the DEA when we cannot be sure of the extent to which the documents Eil seeks implicate their subjects' privacy.  I therefore respectfully dissent.